I'll ask the appellant, it's my understanding from our courtroom deputy, you're splitting your time? Yes, your honor. Did the new advocate file a notice of appearance? Yes, your honor, I just did, it's like 10 minutes ago. All right, so how's the time being split? It would be 8 minutes for each of us, and then 2 minutes, 8 minutes would be 2 minutes per bottle, 7 minutes for Ms. White, and then 3 minutes per bottle. All right then. You may proceed, whoever goes first. I'm sorry, I would like clarification. We're changing the lineup based on what? Your honor, so we had included both Ms. White and myself in the oral acknowledgment form. Are you saying there was an error in our clerk's office, or are you making a change today? No, no, there was an error initially about, I guess, a week, week and a half ago. Apparently, I had understood that the notice of appearance for my co-counsel had already been put on file, but apparently that didn't make it on file. But on the oral acknowledgment form, I did include both my name and that of Ms. White on the oral acknowledgment form. One thing to be clear, are you dividing up the issues, or is one representing one of these appellants and the other representing the other appellant? We're both representing both appellants, your honor, and they are a consolidated claim. All right. Proceed, Mr. Gray. And if I may, Ms. White will be addressing most of the jurisdictional issues, and then I will be addressing the remaining issues. Well, you may need to be ready to respond to anything we ask. Go ahead. Absolutely. Thanks very much, your honor. May it please the court. This is a Federal Tort Claims Act case that comes to the court on appeal from a Rule 12 dismissal for the district court's resolved disputed nationality claims without proper factual development, and on that basis concluded that Section 1252G barred jurisdiction. This appeal is not about expanding citizenship law or creating exceptions to the statute. Rather, it's about when a court may decide citizenship and on what record. Now, the district court dismissed the case, dismissed these cases by resolving a disputed nationality claim or question on the pleadings and then used that premature merits determination to conclude that jurisdiction was barred under Section 1252G. That sequencing is backwards, and it's the sequencing that matters. Citizenship is the jurisdictional predicate for removal authority under Section 1252G, and when citizenship is genuinely disputed, particularly where the record reflects conflicting governmental adjudications such as USCIS's decisions here in this case, the court must decide that question before jurisdiction can be stripped under Section 1252G. So we're not, in essence, we're not asking this court to declare citizenship today for either of the appellants. Instead, we only ask that this case be remanded so that nationality can be adjudicated on a proper factual record rather than assumed away at the pleading stage. Now, this case does require careful consideration of both the facts and the law of the case, especially as much as this unique set of facts informs the legal conclusions that are at play. Upon remand, there are at least four factual issues that would need further development. Firstly, whether there is any additional evidence to support that the government caused the absence of members of the Guerra family, the appellant's family, from the United States during critical phases necessary for retention or transmission of citizenship. Why would that matter? That would matter, Your Honor, because based on how the citizenship and the nationality laws work, that depends on whenever a person is born. And so physical presence is included as a requirement for the purposes of transmitting one's U.S. citizenship to his or her descendants. Right, so all that matters is presence. Well, what matters, Your Honor, is presence, but where the absence of the person transmitting U.S. citizenship to his descendants is caused by governmental error or where it's caused by governmental conduct, that government-caused absence has to be, you know, the question is, what's the result when the absence is caused by the government? It's a procedural error, and it's... Why isn't that an argument for Congress and not for a court? Congress wrote the statute the way it did. It requires physical presence. It has certain very narrow exceptions that don't apply here. It sounds like you're asking us to add another exception, which might well make a lot of good policy sense. It might be fair, et cetera, et cetera. But that's a congressional call. Article I of the Constitution expressly gives Congress the power to pass nationalization laws, not executive officials and not courts. Your Honor, we're not asking the court to rewrite the statute. Instead, what we're asking for is that Rule 12 be applied, you know, strictly just as 1252G should. And that requires a properly developed factual record. And so if I may... But you don't need facts that are irrelevant to the law that we're construing. I assume we agree on that. It's got to be... You have to have a legal theory that is viable before we have a material fact dispute. That's true, Your Honor, yes. Irrelevant facts shouldn't be considered. Okay. So the statute says presence. The statute does... And it's got exceptions for... I'm trying to remember what they are, but they're not applicable here. There are... One for soldiers and things like that. Correct. Well, and to be clear, at the time that the matriarch of the family for whom lineage was asserted...  Cruz, correct. At the time that she attempted to enter the United States in June of 1940, and this is just a... You know, we have documentation of this. Around that same time, her brothers were off fighting Imperial Japan in the Pacific. So to be clear, there is military service by this family. It's just that Cruz... Well, let's accept... That's not Cruz. Okay. Excuse me, Your Honor. Even if constructive presence for Cruz, grandmother, great-grandmother, depending on what part we're talking about, you still need derivative presence for the rest. So at most, you need to convince us of two different legal principles, neither one of which has been recognized in this circuit so far. Maybe constructive presence is. I'm not sure. Excuse me. It's no factual question unless you can convince the court that there is something like derivative constructive presence, which you need for your two clients. Correct? That's a great question, Your Honor. And actually, that's something... Not many people say that. I appreciate that. But go ahead. That's something that the magistrate judge, I believe it was Judge Tolliver, indicated on pages 8 to 9 of the memorandum opinion. I can find the exact record citation here. But it did essentially discuss or contemplate what would be necessary in order to apply the doctrine of constructive presence in the context of transmissibility or transmission of citizenship. And in the memorandum opinion, Judge Tolliver indicated that there is some agency precedent to support the conclusion that where a U.S. citizen has asserted constructive presence in the retention context first, then that does become a relevant fact for the purposes of transmission. Now, in this case, Your Honor, there is evidence of record, there is some evidence of record that Cruz had a difficult time getting the United States government to acknowledge her U.S. citizenship over the course of over 40 years. And it was not until June of 1981 that she was ultimately able to obtain a United States citizenship card. But the fact that... What's your best federal court case, not BIA, federal court case that we can do constructive presence rather than physical presence? Your Honor, the underlying principles here... I was asking for a case. If you don't have one, that's fine, but that will be an admission that you don't have one. I'd be happy to file a supplemental brief, Your Honor, but the underlying principles here have been recognized in other circuits concerning constructive presence and then concerning what to do whenever there is a government-caused absence and whenever there is a procedural error, a structural error. But you said other circuits, so not our circuit. But what's the other circuit that has formally adopted constructive presence as a viable exception to the physical presence requirement? In full disclosure, I don't know of any circuit that has held that in the context of transmission. There are decisions that apply the constructive presence doctrine in the context of retention of citizenship. But the issue is, and this is what Judge Tolliver's opinion or the memorandum opinion discusses, when that claim is first made or first asserted in the context of retention, if that claim can then also be used for the purposes of transmission of United States citizenship. And there are cases that hold that. Essentially, the issue is, it was not just a single failure by the U.S. government to basically wrongfully exclude Cruz from the United States. There's one documented instance, but the question arises, well, how many times did the U.S. government prevent her from reentering the United States? Now, and we know that she attempted to enter the United States because we have a copy of the Immigration Manifest. What we don't have is evidence of the other times that she attempted to enter. Under your theory, how many generations would this be able to work? At least three, based on this case. Well, Your Honor, I don't think it's a question of the number of generations, but I will put it like this. Well, but isn't your theory that Cruz is the one that was obstructed? She was obstructed. And because of that, it's not just Antonio, apologies if I've mispronounced, Antonio Rodriguez, it's not just him, it's also the next generation, one of the plaintiffs. It's also the generation below that. So if it's three, I'm assuming there's no magical number about three. This is going to be ad infinitum. We can go back to the founding. Well, but there is a limiting rule here, which is that if there is a procedural error, if there is an error in the application of the law, what is the result of that? And we're not asking the court to create any sort of equitable remedy. It's for the court to decide what the remedy is, but ultimately that requires remand for further development of the record. So if I may, Your Honor. Well, Counsel, your time is up. Thank you very much, Your Honor. You'll have time for rebuttal. Please. May it please the court. Good afternoon. What's your name? Christy White. Okay, thank you. We didn't have your name on our list, so go ahead. Yes, Your Honor. This case turns on a single threshold question, whether our clients are a United States citizen and not subject to removal. This case presents genuine issues of material fact that are intertwined with both jurisdiction and citizenship, which is why nationality must be decided first, and the case remanded to resolve the disputed facts about his lineage. We know that there are disputed facts because the record is entirely inconsistent and incomplete. It shows a U.S. grandmother, Cruz. But you would agree it doesn't matter if they're disputed facts. What matters is that they are material facts. In other words, we have to accept two things. One, this constructive presence requirement, that it does not have to be physical presence. We can concoct presence based on this theory about the government. And two, that it goes multi-generational or perhaps forever. I would agree that it does matter that they are material facts and disputed facts. Okay. So how many generations would your theory work? Let's say I could prove that in the early 1800s I had an ancestor that had this problem. Would I be automatically entitled to citizenship? Actually, respectfully, no, Your Honor. Okay, so why not? How many generations does this theory work? The structure is the threshold of supporting evidence. Therefore, it's... No, no. Let's say I have evidence that the government in the 1800s, early 1800s, blocked my ancestor, and it's only because of that that we had a chain reaction that affected my entire family tree. And this is a three-generation case. So my question is not fanciful. Your Honor, absolutely correct. And then in that case, Your Honor, then I would state that Section 1252b-5 then applies where Congress obviously intended for a nationality provision to be carved out in Section 1252 in general, which specifically says that if you have a non-frivolous claim for citizenship and it's supported by evidence, then that should be given and that evidence is... Okay, so I think what you're saying is there is no limit. ...and that there is undisputed facts. Okay, so there is no limit. It can be five generations, eight generations, ten generations. As long as you have the facts, then the theory applies. As long as you have the facts and also you have the evidence to support your theory, which is what we have today, the evidence to support a multigenerational transmission of citizenship, as well as, like I was saying before, in Section 1252b-5, when you have a non-frivolous claim that is also supported by evidence and the facts of that claim is disputed, then district courts are to give a judicial independent determination to that case, which is what we did not and were not able to have in this case, and that's what we're asking for, a remand to have a judicial determination of citizenship. As I was saying, in this case, it shows that USCIS approved the father's N-600 and then threatened to cancel based on unspecified fraud or equality, excuse me, I'm super nervous, and then approving my client's N-600 on the same lineage without any evidentiary hearing or coherent explanation. None of this was tested through discovery, live testimony, or fact-finding in the district court. In that posture, the question of whether the multigenerational statutes are properly conferred at birth. The questions are also whether Section 1252's jurisdiction bars even apply because we are contending that the client is a citizen and cannot be resolved on a Code Rule 12b dismissal. The Fifth Circuit's own practice in a derivative citizenship case is to treat such nationality disputes as warranting at least a remand for de novo fact-finding and not outright dismissal. We respect, fully submit, that this court should first ensure that the citizenship question is properly adjudicated and then allow the district court on remand to develop and resolve the factual disputes about my client's lineage and physical presence that go to the jurisdiction and to the merits of this case. I concede my time. You may. Okay. Thank you, Ms. Boyd. Thank you. Thank you, Your Honor. Brian Stoltz on behalf of the appellees in both cases. I'd like to first address the argument about additional factual development. As the court may know from the briefs and the record, the facts that the district courts in both of these cases relied on were the facts that were, in fact, the facts supplied by the plaintiffs themselves, both from their complaints and also from various exhibits and documents that they submitted as attachments to those complaints. So those are the documents that, for example, showed the facts about where Mr. Antonio Guerra Rodriguez was born, when he went to the United States, when he was not present in the United States. Those are the documents that show all these facts. And so there was no sort of error in the district court simply taking information that the plaintiffs themselves provided, the plaintiffs' own allegations, the plaintiffs' own documents, and then ascertaining what the jurisdictional significance of those allegations and documents were, which was a lack of jurisdiction. I'd also like to sort of highlight, which I think was alluded to earlier, that, again, factual disputes are only relevant if there's some legal issue that they are material to, and here that's just not the case. And why is that? A couple of reasons. One is there is no circuit precedent from this court or from any of the other courts that I'm aware of that would allow constructive presence to be applied in this situation. We were talking about a multigenerational link. Are there some authorities, though, like the MADAR opinion from Third Circuit, perhaps some others that do at least recognize that as a concept, constructive presence for the person himself or herself? I believe, yes, Your Honor, the courts recognize that constructive presence has been used in the concept of retention of citizenship. So why would we do it for retention but not transmission? Right. So I think the MADAR decision and some of these other decisions, including the RUNIT and the DROZD decisions, go into that, and they explain it for several reasons. So one of the factors is what the statute expressly says about transmission. The statute that governs transmission has two exceptions that basically allow for the physical presence requirement to be satisfied in lieu of actual physical presence, and that's something Your Honor alluded to. One is if it's a time spent in active military service with the armed services, or the statute was then later amended to add a second exception, and that exception was time spent abroad as an employee of the United States government, so presumably as a non-military State Department officer or something like that. So because the statute that governs transmission gives these two express requirements that essentially allow for deemed or constructive physical presence, that fact of that statute dealing with transmission does not have additional exceptions. That's one reason that this court or other courts have not read non-textual exceptions into the statute. The second reason... Have any courts rejected the use of this doctrine in the transmission context, or is it simply that it's a first impression issue? No, absolutely. Yes, the courts that are, I believe, cited in our brief in the Guerra-Quesada case at page 25 and 26, and then in our brief in the Guerra-Vazquez case at 22 and 24, we talk about MEDAIR, RUNIT, DROZD, all those courts did reject the concept of applying the doctrine of constructive presence into or importing it into the transmission context. Here's my question. If you're acknowledging it, I think you are. Let me actually just ask you a question. Do you agree that we should allow constructive presence in the retention setting? I believe that is consistent with how it's been done before. But there's no textual language that contemplates on the retention setting, is there? Well, the reason I'm hesitating, Your Honor, is because the retention statutes are very, very old, and basically my understanding is there has not been a retention statute for something like 50 years, right? So the way it worked is it used to be the case that if you were born abroad and certain things, you would receive United States citizenship, but if you did not come to the United States by the time you were age 14 and stayed for five years, your citizenship would cease. So when we talk about retention, that's what that means. Now, my understanding at least is that those retention statutes no longer exist, and essentially since the 1970s, that requirement to retain citizenship is not there. So that's all kind of a long-winded way of saying, I don't know that there's any case law that's sort of very current on the retention statutes because it just isn't coming up anymore. But certainly I think it is true. But would it be fair to say, and I appreciate that explanation, but would it be fair to say that these now obsolete, now repealed, since repealed statutes in the retention context, they had the concept or the term physical presence? Right. My understanding is initially it was residence and then it was changed to physical presence. Okay. But the point is courts, I think you acknowledge other courts, not the Fifth Circuit, but other courts, other federal courts of appeals, have construed physical presence in the naturalization context, in the citizenship context, to provide an exception, an atextual exception for these sort of government obstruction type fact patterns. Why would we apply a different rule of interpretation in the transmission context? Right. Why don't we read statutes consistently? Yes, Your Honor, I understand the question. So one is, I'm not 100% sure if it's the Court of Appeals that have done it. I think there's definitely BIA decisions or decisions administratively that use this concept. Two, though, the statute, I think, is different. But I thought, pardon me, I thought you acknowledged that the Runit and MADAR and that line of cases allowed constructive presence in the retention context. Did I misunderstand? I don't think that's quite right. I think what they did is, in those cases, there was an argument brought to them that this concept of constructive presence should be used to allow me to claim citizenship through a transmission. And then the courts recited some of these administrative decisions. And the courts said, okay, well, it looks like there's something that's been called constructive presence in these cases, but these are all retention cases and the cases here are a transmission case. So I don't think the courts actually firmly decided that, but they certainly recognized that it had been done. So the BIA has done it. No courts have done it. The courts have assumed that the BIA did it and just declined to extend it. I think that's right. And back to your question about why the statutes are different, though. Like I said, the transmission statute has this very specific language that talks about there is an exception if for time served abroad as a member of the armed services or as an employee of the United States government. So the statutes themselves are different, right? In other words, there are two exceptions in the transmission context, statutory exceptions in the transmission context. There are no statutory textual exemptions in the retention context. But either way, if we're going to allow an atextual exception in one context, why not allow an atextual exception in the other? One answer would be that we should allow an atextual exception in neither context. I think that's one answer, and I think the second answer is it's not the same context because a statute that has specific exceptions written into the statute then sort of by negative analogy prohibits the use of other atextual exceptions. That's what I'd say. So I don't think it's necessarily the exact same context. Well, you did refer to tribunals that have at least addressed this concept. There is a BIA opinion that is probably discussed in both briefs. Navarette, 1967, pretty dated. Is there no more recent BIA decision that recognizes this? It seems to me if it exists, it hasn't been applied with much regularity. That's essentially my understanding, Your Honor. Is this that one case from 1967? Right. I think the Navarette case is the one case that the parties have cited and that courts have discussed that allowed in some limited way for a constructive presence to be used in this context. Okay, let me ask you a somewhat different question. Obviously, we've been talking about the citizenship issue, constructive derivative. This is really an issue of jurisdiction, the case that we have here. What jurisdiction is there for this case as opposed to being something that the administrative procedures handle? It does seem to me that 8 U.S.C. 1503 may be a usable source here for determining citizenship. What's your response to this? Why can't the plaintiffs use that statute in this case as a matter of jurisdiction even if their evidence doesn't work? It's one thing for us to dismiss the case because there's no jurisdiction. There's something else for us to say, yes, there's jurisdiction, but there's no evidence to support what they are claiming. So is there jurisdiction under 8 U.S.C. 1503 and why not, I think, is your answer. So the answer is no. In these cases, there's not jurisdiction under 8 U.S.C. 1503. So 8 U.S.C. 1503 requires essentially an application to the agency for some document that would recognize citizenship, for example, the Certificate of Citizenship. If that application is ultimately denied, that then gives rise to the ability to file a 1503 action for judicial review of that denial. So is it an exhaustion of remedies problem here? That may be one way to think about it. It's just the predicate for that has not been done here, and that's not what was done here. Now, in contrast, the brother of Manuel Guerra Vazquez, whose name is Jorge Guerra Vazquez, and Mr. Jorge Guerra Vazquez is the father of one of your appellants here, Jorge Antonio Guerra Quezada. Mr. Jorge Guerra Vazquez currently does have a 1503 proceeding that is pending in the district court, totally separate lawsuit. But he did- The same sort of basis, though? The basis for that proceeding- Constructive presence? I mean, it's the same argument? I think it is the same types of arguments. But factually, he applied for a Certificate of Citizenship. I think it was initially granted in error. They revoked it. There was a final administrative decision, and he's now appealing that final administrative decision. So that is how 1503 works. But that is not the situation for these two cases. These are not 1503 actions. These are tort actions. And in that regard, I'd also like to sort of point out that this court, in the Rios-Velenzuela case, explained that there's basically two ways to raise this issue of citizenship. One way to do it is defensively, and you do that by, if you are the subject of removal proceedings but you claim to be a United States citizen, you can interpose that citizenship as a defense in your removal proceedings. And if you are unsuccessful, you can then obtain judicial review through a proceeding in the Court of Appeals on a petition for review. And if the Court of Appeals believes there's some material fact dispute, it can then transfer the case to the district court for fact finding. So that's one route, is raise the issue in your removal proceedings, petition for review, and you get judicial review that way. The second route is the 1503 route, which we just discussed. The plaintiffs here have done neither the petition for review route or the 1503 route. They've instead were both subjected to final orders of removal after they were convicted of criminal offenses. At the time that they were ordered removed, they could have availed themselves of a petition for review proceeding to obtain judicial review of whatever citizenship claim they were making. And, in fact, the record shows that Jorge Antonio Guerra Quezada, he did make a citizenship claim in his removal proceedings. The immigration judge rejected that claim. At that point, Mr. Guerra Quezada could have filed a petition for review and sought judicial review of that. He did not do so, though. Neither did the other plaintiff after his removal proceeding. Instead, they filed a tort claim at one point, something like 15 years after the fact, and are basically trying to use the tort claim as a vehicle under the Federal Tort Claims Act to get judicial review of this issue. And so I think it's very clear under the cases that we've cited, under the way this court has explained it in Rios and Valenzuela, that that is not an appropriate way to obtain judicial review of this. So for this court's purposes, I think the decision that the district court, both district courts here, lacked jurisdiction because the record established that the plaintiffs in both cases were aliens and that they were challenging, quite expressly, they were challenging their orders of removal. They explained that these were cases of wrongful deportation. That's in the first paragraph of each of their complaints. In this situation, 1252 is quite clear that there's no jurisdiction. I don't think this court has to go any further, though, by opining on whether and under what circumstances one of these plaintiffs might be able to bring a 1503 action later. That's just not something that's on this record and the sort of statutory prerequisites have not been satisfied for that. But again, this court doesn't have to decide that. This court, I think, can simply affirm both judgments on the grounds that were given by the district courts, and it'll be a dismissal without prejudice for lack of jurisdiction. And if there's further proceedings administratively in some other time, that can develop as it may. So we would request that both judgments be affirmed, and if there's no further questions, I will cede my time. Thank you. All right, thank you. Thank you, Your Honor. May it please the Court. I'd like to address a few rebuttal points. Firstly, concerning the Section 1503 claim, it wasn't necessary for us to do that initially because at the time that we filed this lawsuit, Mr. Guerra had an N-600 approval from the agency, from USCIS. In fact, five members of this family have had approvals of their U.S. citizenship claims by USCIS. Only after filing the FTCA claim did USCIS cancel the certificate of citizenship. The briefing indicated that perhaps both parties got an N-600 certificate in error. Is there probably more of a question for your friend on the other side, but is there any explanation how did that come about and then determine there was some error? But factually, can you give me an explanation of how both of those came about? In the notice of intent to cancel the certificate of citizenship, USCIS did not allege any new facts that would have justified canceling the certificate of citizenship. Instead, it alleged under 8 U.S.C. I'm sorry, I remember the INA provisions, INA Section 342, that there was an allegation of fraud or illegality, but the agency didn't actually specify what conduct was allegedly fraudulent or illegal. You can move on. Thank you very much, Your Honor. Additionally, you know, concerning the facts supplied by the parties that were, you know, the facts here supplied by the parties included proof that USCIS had approved several N-600 claims. Some of them to this day remain intact. Mr. Garik Asada's N-600 application, it was approved and the certificate of citizenship was only canceled about two, two and a half months ago. Finally, I would like to just address one thing. Why is it, concerning the retention statutes, why is it that the retention statutes were eliminated? It's because some U.S.-born persons were rendered stateless otherwise, and that's one example, it's not the only reason. But just as the agency has applied an atextual remedy in the retention context, it should be applied in the transmission context. I see my time has elapsed. Thank you very much, Your Honor. No worries, Your Honor. Your Honors, I would like to address counsel's statement in regards to Rios Valenzuela in regards to the two procedural ways to assert citizenship. I'm assuming that he was actually quoting Garza Flores v. Mayorkas instead of Rios Valenzuela. And I want to also state that Garza Flores v. Mayorkas emphasizes that nationality issues that are tied to removal are channeled through Section 1252b-5 and not 1252g. With that being stated, Section 1252b-5 is evidence that Congress built in a mechanism to resolve citizenship disputes. It cuts against the reading of Section 1252g as a brick wall in a case where nationality is the whole issue. The statute itself channels nationality issues to the courts. So in a case about wrongful removal of a citizen, jurisdiction should be preserved and not stripped. Our request is narrow. We are not asking the court to supervise day-to-day immigration enforcement against removal aliens. We're asking the court to enforce the basic line Congress itself drew between citizens and aliens and to ensure that a person whom the government now recognizes as a citizen and is not permanently denied any judicial forum because the nationality dispute was never properly heard. For those reasons, we do ask the court to reverse the 12b-1 dismissal and at minimum remand for factual development and a de novo determination of citizenship and the legality of the government's actions. All right, Counsel. Is that your argument? Yes, Your Honor. Thank you very much. Thank you very much. To all three of the attorneys who have argued here and those in the previous argument, this case is under submission, as is the other one. I will say to the students who are here, my understanding of what the illustrious Judge Willett wants to do is that we will conference on these two cases that you just heard, I'm sure fully understanding what they were about without having read the briefs or anything else, as we have. But we will conference for some period of time and then he will come out here and tell that you're welcome to do whatever you want to do within reason. So we are on recess.